| MICHAEL J. REDENBURG, ESQ. PC<br>Michael Redenburg, Esq. (NY #MR4662)<br>11 Park Palce, Suite 817<br>New York, NY 10007<br>Telephone: (212) 240-9465<br>Facsimile: (917) 591-1667 | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| **NASHIEM WEST,**<br><br>                          **Plaintiff,**<br><br>**v.**<br><br>**The City of New York and NYPD Detectives Michael Noboa (Tax ID#937191), Rashan Lacoste (Tax ID#935149), Jorge Tricoche (Tax ID#935871).**<br><br>                          **Defendants.** | **Amended Complaint**<br><br>**JURY TRIAL DEMANDED**<br><br>**Civ. No.:15-cv-3573 (PKC)(VMS)** |

**PRELIMINARY STATEMENT**

1. Plaintiff brings this civil rights action against the City of New York and NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche, alleging that defendants violated his rights under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution by falsely arresting him and using excessive force against him. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs and such other and further relief as the Court deems just and proper.

**JURISDICTION AND VENUE**

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth & Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 and §1343.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, Plaintiff resides in this District and because some or all of the defendants reside in this District.

## DEMAND FOR A JURY TRIAL

4. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury in this action.

## PARTIES

5. Plaintiff Nashiem West ("Plaintiff" or "Mr. West") is a thirty five (35) year old African American man who resides in the County of Kings, City and State of New York.

6. The City of New York is a municipal corporation organized under the laws of the State of New York.

7. Defendant NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche are members of the New York City Police Department ("NYPD") and they were so employed on June 10, 2015. NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche were acting under color of state law and in their capacities as members of the NYPD at all relevant times. Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche are sued in both their individual and official capacities.

## STATEMENT OF FACTS

2

8.  The Incident which is the subject of the instant Complaint took place at about 10 p.m. on June 10, 2015, on Howard Avenue, between Hancock Street and Jefferson Avenue, Brooklyn, NY.

9.  Plaintiff was standing on a public street, talking to his girlfriend on the phone, when an unmarked police vehicle pulled up to the curb, close to where he was standing.

10. Detective Michael Noboa asked Plaintiff, "What are you doing outside?" and Plaintiff responded that he was on the phone.

11. Detective Michael Noboa then asked Plaintiff if it was okay to "check" Plaintiff and Plaintiff reluctantly agreed to be "checked."

12. Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche then got out of the vehicle and Detective Michael Noboa grabbed the front of Plaintiff's belt, above his groin area, instructing the other detectives to "cuff" Plaintiff.

13. Plaintiff then asked why he was being arrested and two of the detectives told Plaintiff that he "knew what he did."

14. Plaintiff was then continually punched in the ribs and torso region, eventually being handcuffed excessively tightly.

15. In agony from the beating, Plaintiff started screaming, "What am I being arrested for?" and was told by one of the NYPD Detectives to "Shut the fuck up."

16. Plaintiff was then placed in the back of the unmarked NYPD car, with his hands cuffed behind his back, and one of the detectives continued to punch Plaintiff in the side of his torso region and pulling on his handcuffed hands by the cuffs, which left marks on Plaintiff's wrist.

17. Once at the 81st Precinct, Plaintiff was informed that he was being arrested for sale of narcotics. He was then subjected to a degrading strip search, which included the detectives placing a flashlight at Plaintiff's anus, which left Plaintiff humiliated and feeling violated.

18. The detectives then told Plaintiff that if he gave them the drugs, they'd let him go, but Plaintiff did not have any drugs to give them.

19. Plaintiff was eventually transported to Central Booking to await arraignment.

20. Once before a Criminal Court Judge, Plaintiff learned that he had not been charged with selling narcotics as the detectives had told him, but rather, charged solely with Resisting Arrest.

21. At arraignment, the matter was adjourned in contemplation of dismissal.

22. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation and suffered physical pain- all to his detriment.

## FIRST CLAIM
### *False Arrest*

23. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

24. NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche violated the Fourth and Fourteenth Amendments because they arrested Plaintiff without probable cause.

25. Plaintiff was aware of his confinement and he did not consent to it.

26. The confinement was not otherwise privileged.

27. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

4

## SECOND CLAIM
### *UNREASONABLE FORCE UNDER 42 U.S.C. §1983*

28. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

29. NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche violated the Fourth and Fourteenth Amendments when they used excessive force in the way they treated Plaintiff, in that punching him repeatedly and yanking on his handcuffs was objectively unreasonable, especially in light of the fact that Plaintiff had no weapons or contraband on his person.

30. Due to the manner in which the NYPD Officers manhandled Plaintiff, Plaintiff suffered physical pain and fear.

31. As a direct and proximate result of the aforementioned conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### *MONELL CLAIM*

32. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

33. The City of New York is a "person" within the meaning of 42 U.S.C. §1983.

34. The acts complained of were carried out by the aforementioned defendants in their official capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and NYPD, all under the supervision of ranking officers of the NYPD.

35. The City is liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, servants, in that, after learning of their employees' violation of Plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy and/or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

36. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

37. Examples of the permanency of the City's police officers using excessive force against unarmed civilians include, but are certainly not limited to, the well publicized death of an unarmed black man on Staten Island, Eric Garner, after police placed Mr. Garner in a choke-hold for selling untaxed cigarettes, ultimately resulting in Mr. Garner's death; and the recent incident in New York which resulted in Corey Greene being required to undergo surgery to restore blood flow to his genitals after an NYPD Officer kicked him between the legs during a criminal investigation.

38. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; and that deliberate indifference caused the violation of Plaintiff's constitutional rights in this case.

39. In a sixty-two (62) page report issued by the New York City Department of Investigation/Office of the Inspector General ("OIG-NYPD Report") on October 1, 2015,

it was concluded that, "Historically, NYPD has frequently failed to discipline officers who use force without justification." (Ex. A, p. 2)

40. The OIG-NYPD Report further found, "NYPD's current use-of-force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force. NYPD's current use-of-force Patrol Guide procedure, which is barely more than a page of text, is completely silent on what actions constitute "force." The Patrol Guide likewise prohibits "excessive force" while offering no clarity on what constitutes "excessive force." (Ex. A, p. 3)

41. As the OIG-NYPD Report makes clear, it is the Department's failure to discipline its officers that use excessive force without justification that emboldened NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche to use excessive force against Plaintiff, causing Plaintiff's physical injuries that required medical attention and continued medical treatment.

42. The OIG-NYPD Report also found that, "NYPD frequently failed to impose discipline even when provided with evidence of excessive force (Ex. A, p. 47)," which further emboldened NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche to use the unreasonable and excessive force he did, when they punched Plaintiff in the ribs and torso, finally yanking on his handcuffs - causing Plaintiff physical pain.

43. The unreasonable force used against Plaintiff is attributable to the, "NYPD's current use-of-force policy [which] is vague and imprecise, providing little guidance to individual officers on what actions constitute force." (Ex. A, p. 3)

44. Within the OIG-NYPD Report (Ex. A, p. 34), it was concluded that, "The Patrol Guide articulates a policy on the need for the application of force to be proportional to the

circumstance and imposes an affirmative duty on officers to prevent the unnecessary escalation of force when it appears excessive. However, it does not articulate a policy on the importance of <u>reducing</u> the likelihood that force is needed in a given situation."

45. It is the City's failure to articulate a policy on the importance of reducing the likelihood that force is needed, that directly led to NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche's unnecessary force against Plaintiff, which was disproportionate to the circumstances, given that Plaintiff was unarmed.

46. It was the City's failure to train its officers de-escalation, that directly led to  NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche's use of force against Plaintiff, which was unreasonable, given that Plaintiff was unarmed. The OIG-NYPD Report found that, "there is also too little focus on de-escalation during NYPD's training sessions. NYPD spends only a portion of a four-and-a-half-hour course teaching de-escalation, out of 468 classroom hours- less than one percent of the curriculum." (Ex. A, p. 43-44).

47. The City's custom and practice of failing to train its officers to de-escalate encounters with the public, led directly to NYPD Detectives Michael Noboa, Rashan Lacoste and Jorge Tricoche's decision to use unreasonable force against Plaintiff on June 10, 2015. As the OIG-NYPD Report found, "The NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public." (Ex. A., p. 3).

48. The Incident that Plaintiff complains of is not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of the City's police officers use

excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obvious illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

49. In addition, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

50. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following-up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

51. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.

52. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiff's civil rights without fear of reprisal.

53. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

54. As a result of the foregoing, Plaintiff suffered an unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation and suffered physical pain – all to his detriment.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

   a.  Compensatory damages against all defendants, jointly and severally;

   b.  Punitive damages in an amount to be determined by a jury;

   c.  Reasonable attorneys' fees and costs; and

   d.  Such other relief as this Court shall deem just and proper.

10

Dated:  February 19, 2016
       New York, NY

**s/Michael J. Redenburg_____**
Michael J. Redenburg (NY #MR4662)
MICHAEL J. REDENBURG, ESQ. PC
11 Park Place, Suite 817
New York, NY 10007
mredenburg@mjrlaw-ny.com
1-212-240-9465 (Phone)
1-917-591-1667 (Fax)
